UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  IN THE MATTER OF
S.L.C. INFANT UNDER THE AGE
OF 16
_____

MARIO ALBERTO LOPEZ MORALES,

      Petitioner,

v.                     Case No: 2:14-cv-88-FtM-29CM

NENCY CASTELLANOS MARTINEZ,

      Respondent.
_____

## OPINION AND ORDER

This matter comes before the Court on petitioner Mario Alberto Lopez Morales's Verified Petition for Return of Child to the Republic of Mexico (Doc. #1) filed on February 14, 2014. Respondent Nency Castellanos Martinez filed a Response (Doc. #20) on May 7, 2014. After ordering expedited pretrial proceedings, the Court conducted a bench trial on June 16, 2014.

The Verified Petition is filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670 1343 U.N.T.S. 97, reprinted in 51 Fed. Reg. 10,493 (Mar. 26, 1986) and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq. Petitioner and respondent are the married

parents of S.L.C., their twelve year old daughter.  Petitioner alleges that respondent wrongfully removed S.L.C. from the Republic of Mexico and has wrongfully retained her in the United States.  Respondent counters that petitioner was not exercising custody at the time of removal, subjected S.L.C. to physical and psychological abuse, and S.L.C. wishes to remain in the United States with her mother.

## I.

The general principles relating to the Hague Convention are well-settled.  To address the harm done to children[1] by international parental kidnapping/retention, the Hague Convention is designed to restore the factual status quo and protect the legal rights of the non-abducting/retaining parent.  The stated objectives of the Hague Convention are (1) to "secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States."  Lops v. Lops, 140 F.3d 927, 935 (11th Cir. 1998) (quoting Hague Convention art. 1); see also United States v. Newman, 614 F.3d 1232, 1235-36 (11th Cir. 2010); Baran v. Beaty, 526 F.3d 1340, 1344 (11th Cir. 2008);

---

[1]The Hague Convention effectively defines "children" as being under 16 years of age.  When a child attains the age of 16 years, the Hague Convention ceases to apply.  Hague Convention art. 4.

Pielage v. McConnell, 516 F.3d 1282, 1286 (11th Cir. 2008).  Thus, a court considering a petition for the return of a child under the Hague Convention and ICARA "has jurisdiction to decide the merits only of the wrongful removal [or retention] claim, not of any underlying custody dispute . . . The Hague Convention is intended to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" Lops, 140 F.3d at 936 (citations omitted) (quoting Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996)); see also Baran, 526 F.3d at 1344.

The Hague Convention mandates the return of children to their prior circumstances if one parent's removal or retention violated the custody rights of the other parent and was therefore "wrongful."  Hague Convention art. 12; 42 U.S.C. § 11601(a)(4). The removal or retention of a child is "wrongful" where it (1) violates the "rights of custody" of the non-abducting/non-retaining person "under the law of the State in which the child was habitually resident immediately before the removal or retention," and (2) the rights of custody were actually being exercised at the time of the removal or retention, or would have been exercised but for the removal or retention.  Hague Convention art. 3; Pielage, 516 F.3d at 1286-87; Lops, 140 F.3d at 935. Therefore, a petitioner establishes the elements of wrongful

removal or retention by demonstrating by a preponderance of the evidence[2] that: (1) the habitual residence of the child immediately before the date of the allegedly wrongful removal or retention was in the country to which return is sought; (2) the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (3) the petitioner was actually exercising or would have been exercising custody rights of the child at the time of his or her removal or retention. Chafin v. Chafin, 742 F.3d 934, 938 (11th Cir. 2013); Ruiz v. Tenorio, 392 F.3d 1247, 1251 (11th Cir. 2004); Lops, 140 F.3d at 935-36.  If petitioner meets this burden, the child who is wrongfully removed or retained must be promptly returned.  Lops, 140 F.3d at 935-36 (citing 42 U.S.C. § 11601(a)(4)); see also Abbott v. Abbott, 560 U.S. 1, 8-9 (2010).

The general rule that a wrongfully removed or retained child must be returned is subject to six exceptions, each of which may excuse the return of the child.  Hague Convention art. 12, 13, 20. A court is not bound to order the return of a child if respondent demonstrates by a preponderance of the evidence[3] that: (1) the person having care of the child was not actually exercising their custody rights at the time of removal or retention; (2) the person

---

[2] 42 U.S.C. § 11603(e)(1)(A); Pielage, 516 F.3d at 1286.

[3] 42 U.S.C. § 11603(e)(2)(B).

having care of the child had consented to or subsequently acquiesced in the removal or retention of the child; (3) "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views"; or (4) the proceedings were commenced more than one year after the date of the wrongful removal or retention and "the child is now settled in its new environment." Hague Convention art. 12, 13. Additionally, a court is not bound to order the return of a child if respondent demonstrates by clear and convincing evidence[4] that: (5) there is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation"; or (6) return of the child would not be permitted by fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. Hague Convention art. 13, 20. These "affirmative defenses" are narrowly construed to effectuate the purpose of the Hague Convention. See, e.g., Baran, 526 F.3d at 1345. Even if an exception is established, the Court has discretion to order the return of a child if return would further the aims of the Hague Convention. See Miller v. Miller, 240 F.3d 392, 402 (4th Cir. 2001); England v. England, 234 F.3d 268, 270-71 (5th Cir. 2000);

---

[4] 42 U.S.C. § 11603(e)(2)(A).

Friedrich, 78 F.3d at 1067; Feder v. Evans-Feder, 63 F.3d 217, 226 (3d Cir. 1995).

## II.

Based upon the evidence and testimony that the Court found to be credible, the Court makes the following findings of fact:

Mario Alberto Lopez Morales (petitioner or Lopez) and Nency Castellanos Martinez (respondent or Castellanos) were married in Mexico on September 6, 2003. Petitioner is a citizen of Mexico and respondent is a citizen of Cuba and Mexico. Their daughter, S.L.C., was born in 2002 and is a citizen of Mexico. Respondent asserts that S.L.C. is also a citizen of Cuba by virtue of her mother's Cuban citizenship.

In June 2006, respondent removed S.L.C. from Mexico and brought her to Florida to live with respondent's family due to marital troubles. Petitioner, however, was able to convince respondent to return to their marital home in Mexico. Respondent and S.L.C. resided with petitioner in Mexico until April 2012, at which time they again returned to Florida without petitioner's knowledge or consent. Petitioner learned from his brother-in-law's girlfriend that respondent and S.L.C. were located in Florida, and on May, 16, 2012, petitioner filed a Hague application with the Mexican Central Authority. Petitioner also filed a civil action seeking provisional care and custody over the child in

Mexico.  In August 2012, petitioner visited his wife and daughter in Florida, and on August 30, 2012, respondent and S.L.C. voluntarily returned to Mexico.  As a result, petitioner halted the proceedings under the Hague Convention in Mexico.  Prior to leaving the United States, Castellanos, on behalf of herself and S.L.C., applied for asylum as a Cuban immigrant.  Lopez, however, was unaware of the application for asylum.

Upon their return to Mexico, petitioner and respondent did not live together as a family but were separated.  Petitioner rented an apartment for respondent and S.L.C., and arranged for S.L.C. to return to the private school she had attended since pre-kindergarten.  Petitioner paid for their apartment, automobile, food, school, and living expenses.  He also deposited money into an account that could only be accessed by respondent.

On September 12, 2012, respondent filed a criminal complaint against petitioner for aggravated family violence.  On the same day, Castellanos entered the formal marital residence with the purpose of residing there and took steps to prevent petitioner from entering the premises.  Lopez thereafter resided in an apartment.  The criminal charges against petitioner were ultimately dropped because the prosecutor determined that there was no cause for the charges.

Petitioner testified that he would take S.L.C. to school in the mornings and would take her to dinner and do homework with her two to three times a week.  On weekends, petitioner would spend time with his daughter and take her to visit family and friends. This continued until January 2013.  Petitioner was able to contact S.L.C. directly on the cell phone that he had provided to her.

On February 1, 2013, respondent filed a child custody case in Mexico, to which petitioner filed a countersuit seeking guardianship and custody of the child, as well as an order prohibiting the mother from removing the child from Mexico.  On February 26, 2013, the court entered an order prohibiting respondent from leaving the country with S.L.C. during the proceedings.

Prior to the entry of the order, respondent decided to return to Florida.  Respondent testified that she entered the United States with S.L.C. on February 24, 2013, and admitted that she did so without petitioner's knowledge or consent.  Because petitioner was in possession of their passports, respondent sought refuge under the Cuban Adjustment Act.  Respondent now resides in this district and has taken steps to obtain residency in the United States.

Petitioner discovered the absence of S.L.C. on March 1, 2013, when the child's teacher advised petitioner that S.L.C. had not

attended classes since February 22, 2013.  On the following evenings, petitioner drove by the house where respondent and S.L.C. resided and noticed that the same lights were on each night.  On March 5, 2013, petitioner entered the home with an Agent of the Public Ministry only to discover that most of the items in the house had been removed and the walls had been vandalized.  The walls were painted with derogatory slogans about petitioner.

Petitioner last spoke with S.L.C. on February 20, 2013, but has tried to contact her via phone, email, and Facetime. Respondent did not inform petitioner as to S.L.C.'s whereabouts or provide him with any contact information.  Petitioner was eventually able to locate S.L.C. with the assistance of federal and local law enforcement agencies.

### III.

**A.  Petitioner's Case:**

Petitioner asserts respondent wrongfully removed S.L.C. from the Republic of Mexico and has wrongfully retained her in the United States.  The relevant factors remains largely uncontested, but due to respondent's pro se status, the Court will address them nonetheless.

The two threshold issues in any Hague Convention case are easily satisfied.  The evidence shows, and the parties agree, that the child is under 16 years of age.  It is also clear that the

Republic of Mexico and the United States became signatories to the Hague Convention prior to the events at issue in this case. The remaining requirements are discussed below:

**(1)  Habitual Residence of the Child**

Petitioner must establish that his daughter's habitual residence was Mexico at the time of respondent's removal and retention of the child. Hague Convention art. 3. This requires the Court to first determine when the alleged wrongful retention took place, because the only point in time when habitual residence is relevant under the Hague Convention is immediately before the retention. Barzilay v. Barzilay, 600 F.3d 912, 918 (8th Cir. 2010). Here, respondent testified that on February 24, 2013, she removed S.L.C. to the United States without the consent of petitioner. The issue therefore becomes the location of S.L.C.'s habitual residence as of on or about February 24, 2013.

Neither the Hague Convention nor ICARA define habitual residence. Rather than a definition, the Eleventh Circuit has adopted an approach to determine habitual residence. Determination of a habitual residence focuses on the existence or non-existence of a settled intention to abandon the former residence in favor of a new residence, coupled with an actual change in geography and the passage of a sufficient length of time for the child to have become acclimatized. Chafin, 742 F.3d at

938; Ruiz, 392 F.3d at 1253-54 (adopting the approach set forth in Mozes v. Mozes, 239 F.3d 1067 (9th Cir. 2001)).   The Court concludes that petitioner has established by a preponderance of the evidence that on or about February 24, 2013, S.L.C.'s habitual residence remained Mexico.

The evidence undisputedly shows that S.L.C. was born and raised in Chiapas, Mexico, attended school in Mexico, and is a citizen of Mexico.   Although S.L.C. lived in Florida for a short period in 2012, without the consent of petitioner, and has now spent more than a year in the United States, the Court finds that her habitual residence has not changed due to the unilateral actions of respondent.   According to the Eleventh Circuit, "in the absence of settled parental intent, courts should be slow to infer from such contacts [with the new residence] that an earlier habitual residence has been abandoned." Ruiz, 392 F.3d at 1253 (quoting Mozes, 239 F.3d at 1081).   See also Chafin, 742 F.3d at 938.   Respondent has failed to present any evidence indicating that petitioner and respondent intended to abandon their home in Mexico in favor of moving to Florida.   Additionally, the relatively limited period of time S.L.C. spent in Florida in 2012 was without the consent of petitioner, and therefore violated the Hague Convention.   The Court finds that the habitual residence of S.L.C. at all relevant times was Mexico.

**(2)  "Removal" and "Retention" of the Child**

Petitioner must also establish that there has been a "removal" or "retention" within the meaning of the Hague Convention.  A child is removed or retained within the meaning of the Hague Convention if the child has been removed or prevented from returning to her usual family and social environment.  Pielage, 516 F.3d at 1287.  See also Karkkainen v. Kovalchuk, 445 F.3d 280, 291 (3d Cir. 2006).  Here, the evidence unmistakably shows that respondent removed the child from her habitual residence in Mexico without petitioner's consent and has retained her in the United States without petitioner's permission.  Respondent has also taken steps to establish residency in the United States, further establishing retention.  Accordingly, the Court finds that there was a "removal" and "retention" of S.L.C. within the meaning of the Hague Convention from at least February 24, 2013, forward.

**(3)  "Wrongful" Removal and Retention of the Child**

The Court must next determine whether the removal and retention was wrongful.  Pielage, 516 F.3d at 1287.  Not every retention is wrongful; retention is wrongful under the Hague Convention only where it is in breach of rights of custody attributed to the non-retaining party.  Id. at 1288.  "The existence of 'rights of custody' are determined by the law of the country in which the child habitually resides at the time of

removal."  Hanley v. Roy, 485 F.3d 641, 645 (11th Cir. 2007).  The

Eleventh Circuit also emphasized that:

> [i]t is crucial to note that the violation of a *single*
> custody right suffices to make removal of a child
> wrongful.  That is, a parent need not have "custody" of
> the child to be entitled to return of his child under
> the Convention; rather, he need only have one right of
> custody.  Further, he need not have a *sole* or even
> *primary* right of custody.

Id. at 647 (emphasis in original).

Petitioner argues that his "right to custody" is established

by  the  Mexican  doctrine  of  *patria  potestas*  (parental

authority/responsibility), as codified in the Civil Code for the

States of Chiapas, Mexico.[5]  (See Doc. #1-14.)  The doctrine of

*patria  potestas*  provides  parents  with  certain  rights  and

responsibilities regarding their children, including the custody

and care of the children.  Section One, Title Eighth, Article 412

of the Civil Code for the State of Chiapas provides that:

> "In case of separation between those who exert parental
> authority/responsibility  (*patria  potestas*),  both
> parents must continue fulfilling their obligations and
> they can agree on the terms of its exertion, particularly
> in all things concerning the care and custody of the
> minors.  They may assign one person or decide for

---

[5]Petitioner also argues that the *ne exeat* order entered in
the custody case on February 26, 2013, creates a right of custody.
In Abbot, the Supreme Court concluded that *ne exeat* rights are
rights of custody, 560 U.S. at 16; however, the order was entered
after respondent removed S.L.C. from Mexico.  The Court declines
to determine whether the order constitutes a right of custody in
this matter because petitioner has established a right of custody
on other grounds.

custody to be shared.   In case of disagreement, the
judge will decide the matter . . . .

(Doc. #1-14, p. 4.)

Here, the evidence amply establishes that petitioner and
respondent have not agreed to the terms of exertion of parental
authority/responsibility over S.L.C. and that custody proceedings
remain pending in Mexico.   Thus, the Court finds that the rights
and obligations provided by the doctrine of *patria potestas* create
a "right of custody" and concludes that the rights and obligations
of petitioner have not been severed.   Most other courts have
concluded that the doctrine indeed confers such rights.   See
Whallon v. Lynn, 230 F.3d 450, 458 (1st Cir. 2000); Garcia v.
Angarita, 440 F. Supp. 2d 1364, 1379 (S.D. Fla. 2006); Lalo v.
Malca, 318 F. Supp. 2d 1152, 1154 (S.D. Fla. 2004); Mendez Lynch
v. Mendez Lynch, 220 F. Supp. 2d 1347, 1358 (M.D. Fla. 2002).

Additionally, the Hague Convention specifically provides that
"rights of custody" include "the right to determine the child's
place of residence."   Hague Convention art. 5.   One parent may not
unilaterally determine the country in which the child will live;
this means that "the habitual residence of the child cannot be
shifted without mutual agreement."   Mikovic v. Mikovic, 541 F.
Supp. 2d 1264, 1275 (M.D. Fla. 2007) (quoting Cabrera v. Lozano
(In re Cabrera), 323 F. Supp. 2d 1303, 1311 (S.D. Fla. 2004)).
Returning a child to her habitual residence, however, does not

require the consent of both parents since the very purpose of the Hague Convention is to "restore the pre-abduction [or retention] status quo," Lops, 140 F.3d at 936 (internal quotations omitted), "and to establish procedures to ensure [the child's] prompt return to the State of [her] habitual residence," Baran, 526 F.3d at 1344 (internal quotations omitted).

The Court concludes that the evidence in this case establishes that respondent's removal and retention of the child was wrongful under the Hague Convention. Respondent's unilateral removal and retention of S.L.C., without the consent of petitioner, violates petitioner's custody rights under the law of Mexico.

**(4) Petitioner's Exercise of Custody Rights**

While the Hague Convention does not define the "exercise" of rights of custody, the Sixth Circuit has stated that "[t]he only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." Friedrich, 78 F.3d at 1065. The court went on to "hold that, if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the

child." Id. at 1066. See also Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1286–87 (S.D. Fla. 1999).

Under this standard, petitioner has established he was exercising his rights of custody at the time the child was wrongfully removed and retained. As detailed above, petitioner took steps to remain in contact with S.L.C., such as taking her to school, spending time with her on the weekends, and providing her with a cell phone and iPad. Petitioner has also testified that he paid for S.L.C. to attend a private school as well as numerous other expenses. Respondent disputes petitioner's testimony as to the amount of contact with S.L.C.; however, the evidence does not suggest that petitioner clearly and unequivocally abandoned the child. Accordingly, petitioner has met his burden of establishing that S.L.C. was wrongfully removed and retained by respondent and should be returned to Mexico, her habitual place of residence.

## B.   Respondent's Affirmative Defenses

Respondent has not formally asserted any affirmative defenses, but in construing the pleadings liberally, respondent appears to assert that petitioner was not actually exercising his custody rights at the time of removal, S.L.C. objects to being returned, and there is a grave risk that the child would be exposed to physical or psychological harm if returned to Mexico. Each of

the exceptions is to be applied narrowly.   Rydder v. Rydder, 49
F.3d 369, 372 (8th Cir. 1995); 42 U.S.C. § 11601(a)(4).

**(1)  Not Exercising Rights of Custody**

A court is not bound to order the return of a child if
respondent demonstrates by a preponderance of the evidence that
the person having care of the child was not exercising rights of
custody at the time of the removal or retention of the child.
Hague Convention, art. 13(a); 42 U.S.C. § 11603(e)(2)(B).   The
Court has already found that petitioner has established by a
preponderance of the evidence that he was exercising his rights of
custody regarding S.L.C. at the time of removal and retention.
Accordingly, this affirmative defense has not been established by
respondent.

**(2)  Wishes of the Child**

A court is not bound to order the return of a child if
respondent demonstrates by a preponderance of the evidence that
"the child objects to being returned and has attained an age and
degree of maturity at which it is appropriate to take account of
its views."   Hague Convention, art. 13; 42 U.S.C. §
11603(e)(2)(A).   This provides a separate and independent basis
for a court to refuse to return a child to the country of habitual
residency, Blondin v. Dubois, 238 F.3d, 153, 166 (2d Cir. 2001),

although like other exceptions it is narrowly applied.  <u>England</u>, 234 F.3d at 272.

Respondent testified that S.L.C. informed her that she does not want to go back to Mexico and is really happy here.  Respondent further testified that S.L.C. is very intelligent and cannot be manipulated because she knows what she wants.[6]  Despite the child's objection, the Court concludes that, under the circumstances of this case, S.L.C.'s opinion on returning to Mexico is not conclusive.  S.L.C. is only 12 years old and has been under the exclusive custody of respondent for an extended period of time.  Naturally, she prefers to remain here in the United States with her mother instead of moving back to Mexico.  The Court finds that the return of S.L.C. to Mexico furthers the aims of the Hague Convention, and therefore will exercise its discretion to order her return despite her view.

### (3)  Grave Risk of Exposure to Physical or Psychological Harm

A court is not bound to order the return of a child if respondent demonstrates by clear and convincing evidence that there is a grave risk that the child's return would "expose the

---

[6]The Court took respondent's request that S.L.C. be allowed to testify under advisement.  Having reviewed the evidence and thoroughly considered the matter, the Court finds that the child's testimony is not necessary.  The request is therefore denied.  The Court assumes for purposes of this proceeding that respondent's testimony about the wishes of S.L.C. is correct.

child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention art. 13(b); 42 U.S.C. § 11603(e)(2)(A). This exception therefore requires evaluation of the grave risk of physical harm to the child, psychological harm to the child, or if return would otherwise place the child in an intolerable situation. Like the other exceptions, this is a narrow exception. England, 234 F.3d at 270-71; Whallon, 230 F.3d at 459; Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 376 (8th Cir. 1995).

The assessment focuses upon the child, and it does not matter if the respondent is the better parent in the long run. Nunez-Escudero, 58 F.3d at 377. "The exception for grave harm to the child is not license for a court in the abducted-to country to speculate on where the child would be happiest." Friedrich, 78 F.3d at 1068. "A removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted." Friedrich, 78 F.3d at 1068.

This exception requires the alleged physical or psychological harm to be "a great deal more than minimal." Whallon, 230 F.3d at 459 (quoting Walsh v. Walsh, 221 F.3d 204, 218 (1st Cir. 2000)). Only severe potential harm to the child will trigger this Article 13(b) exception. Nunez-Escudero, 58 F.3d at 377 (citing the

Supreme Court of Canada in <u>Thomson v. Thomson</u>, 119 D.L.R. 4th 253, 286 (Can. 1994)).  The harm must be greater than what is normally expected when taking a child away from one parent and passing the child to another parent.  <u>Whallon</u>, 230 F.3d at 459.

The Court finds that respondent has not come close to establishing clear and convincing evidence to support this defense.  There is no evidence that petitioner has ever physically harmed the child, or that the child would be exposed to physical or psychological harm if she is returned to Mexico.  Respondent testified that she was subjected to abuse and mistreatment, but has failed to substantiate her testimony or prove that S.L.C. was subjected to the same abuse.  Petitioner's eldest daughter, Maria Alicia Lopez Tovalla, testified that her father is not a violent man and that she was never abused by him.  She also testified that she was close to S.L.C. and never heard her complain of any violent acts.  Based on the evidence, the Court concludes that this the exception for the grave risk of physical or psychological abuse is inapplicable in this matter.

Accordingly, it is hereby

**ORDERED:**

1.  Petitioner Mario Alberto Lopez Morales's Verified Petition for Return of Child to the Republic of Mexico (Doc. #1) is **GRANTED.**

2.   Respondent shall surrender custody of the minor child, S.L.C., to petitioner Mario Alberto Lopez Morales or his designee **on or before noon on July 7, 2014**, for return to Mexico.  Counsel for petitioner shall coordinate arrangements with respondent.

3.   S.L.C. shall be returned to Mexico at petitioner's expense.  Respondent may accompany petitioner and S.L.C. to Mexico if she chooses, at her own expense.

4.   The Clerk of the Court is directed to release S.L.C.'s birth certificate to counsel for petitioner or to petitioner.

5.   The Clerk is further directed to enter judgment accordingly, terminate all pending motions and deadlines, and close the case.

6.   A copy of this Opinion and Order shall be sent to respondent at the email address provided to the Clerk.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of June, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record

Nency Castellanos Martinez
23031 Jumper Avenue
Port Charlotte, FL 33952